**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

|  |  |
|---|---|
| KARIN SANDQUIST, individually and all others similarly situated,<br><br>   Plaintiffs,<br><br>v.<br><br>BURLINGTON STORES, INC. d/b/a BURLINGTON and BURLINGTON COAT FACTORY,<br><br>   Defendant. | **CLASS ACTION COM-PLAINT**<br><br>**Case No.:**<br><br><u>**JURY TRIAL DEMANDED**</u> |

## <u>CLASS ACTION COMPLAINT</u>

1. Plaintiff KARIN SANDQUIST ("<u>Plaintiff</u>"), on behalf of herself and others similarly situated, by and through the undersigned attorneys for Plaintiff, brings this Class Action Complaint against defendant BURLINGTON STORES, INC. d/b/a BURLINGTON and BURLINGTON COAT FACTORY ("<u>BURLING-TON STORES</u>"), for the practice of systematically misrepresenting, charging and collecting amounts represented to be Florida sales and use tax ("<u>sales tax</u>" or "<u>sales and use tax</u>") for purchases of tax-exempt Baby and Toddler Products (defined below) in the Florida stores of defendant BURLINGTON STORES. The plaintiff

class ("Class") consists of all persons who were charged sales tax on tax-exempt Baby and Toddler Products at a BURLINGTON STORES retail store in Florida during the period from July 1, 2023 to present (the "Class Period").

**NATURE OF THE ACTION**

2. The Florida retail stores of defendant BURLINGTON STORES charge and collect a 7% surcharge payment, presented as Florida sales tax, from its customers buying certain baby and toddler clothes, shoes, or other apparel, which are sales tax exempt "Baby and Toddler Products" under Florida law. ("Baby and Toddler Products" as used herein has the meaning provided in FLA. STAT. § 212.08(7)(qqq), which provides a categorical Florida sales tax exemption for, among other things, baby and toddler clothing (size 5T and smaller), apparel, and shoes (size 13T and smaller) and other categories of products intended for and marketed for babies and toddlers.) [1]

3. When a customer purchasing a Baby and Toddler Product is overcharged, under pretense of lawful Florida sales tax, at the Florida retail stores of defendant BURLINGTON STORES, the customer receives a receipt, onto which point-of-sale system has calculated and printed an itemized charge for "**7.000%**

---

[1] The sales tax exemption also applies to other products intended for and marketed for babies and toddlers such as, baby cribs, exercisers, strollers, and changing tables. See FLA. STAT. § 212.08(7)(qqq); see also, infra, note 7 & note 8 (Florida Department of Revenue Tax Information Publications publicizing the sales-tax exemption.

**Sales Tax**" and accordingly, the 7% charge, presented as a Florida sales tax, has been added to the customer's purchase subtotal, and collected by defendant BUR-LINGTON STORES. This systematic miscalculation and overcharge is deceptive and unlawful under Florida law.

4.      The above-described deceptive and unlawful acts violate the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). Moreover, Plaintiff separately alleges that defendant BURLINGTON STORES is further liable under common law claims of fraudulent misrepresentation, unjust enrichment, breach of contract, unconscionability, conversion, negligent misrepresentation and negligence.

5.      From this Court, Plaintiff seeks, among other things, an order: certifying this action as a Class Action and appointing Plaintiff and her legal counsel to represent the Class; awarding repayment, with interest, of the wrongfully charged sums purported to be sales tax on Baby and Toddler Products collected from members of the proposed Class, any other actual damages, compensatory damages, statutory damages, statutory penalties, and punitive damages, and such injunctive or other equitable relief necessary to prevent further misconduct. Plaintiff further seeks from this Court, as equitable relief, an order requiring defendant BURLINGTON STORES to implement safeguards, policies and procedures to ensure that the point of sale system used complies with applicable tax laws, and that employees are appropriately trained to use the point-of-sale system and trained to

take such precautions necessary to prevent the illegal overcharge of sales tax on exempt items.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction under the Class Action Fairness Act of 2005 ("CAFA") codified as 28 U.S.C. § 1332(d)(2), because the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs; the number of members of the proposed Class exceeds 100; and Plaintiff and members of the proposed Class are citizens of a State different than that of defendant BURLINGTON STORES.

7.      This Court has personal jurisdiction over defendant BURLINGTON STORES, pursuant to Florida §§ 48.193(1)(a)(1), (2), & (6), because defendant BURLINGTON STORES is: operating, conducting, engaging in, and carrying on a business in Florida; engaging in the deceptive overcharge and collection of sales taxes on tax exempt Baby and Toddler Products in this District; and causing injury to Plaintiff by using an improperly programmed point-of-sale system and failing to train employees to identify and correct overcharges purported to be lawful sales tax prior to presenting and collecting payment on such overcharges.

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because Plaintiff suffered injury as a result of the acts of BURLINGTON STORES in this District, many of the transactions giving rise to this action occurred in this District,

and defendant BURLINGTON STORES conducts substantial business in this District. Defendant BURLINGTON STORES intentionally availed itself of this District's laws and markets of this District, and defendant BURLINGTON STORES is subject to personal jurisdiction in this District.

## THE PARTIES

9.      Plaintiff was at all times relevant hereto a resident of Miami-Dade County, Florida when Plaintiff purchased, during the Class period, tax exempt Baby and Toddler Products from defendant BURLINGTON STORES, and was thereby overcharged due to the deceptive practices of Defendant BURLINGTON STORES described herein, causing an ascertainable loss and monetary damages.

10.     Defendant BURLINGTON STORES is a Delaware corporation, with headquarters and principal place of business located at 2006 Route 130 North Burlington, New Jersey 08016, and does business in Florida with citizens of Florida and throughout the United States.

11.     Defendant BURLINGTON STORES owns and operates retail stores across the United States, doing business as BURLINGTON STORES and BURLINGTON COAT FACTORY, having 119 stores in the State of Florida (and greater than 1,100 stores nationwide).

**FACTUAL ALLEGATIONS**

**I.    DEFENDANT BURLINGTON STORES CHARGED AND COLLECTED SALES TAX FROM PLAINTIFF ON EXEMPT BABY AND TODDLER ITEMS**

12.    Defendant BURLINGTON STORES sells a variety of Baby and Toddler Products including, but not limited to, baby and toddler clothing, apparel, shoes and other categories of products primarily intended for and marketed for baby and toddler aged children. Defendant BURLINGTON STORES markets, offers, and sells these Baby and Toddler Products to consumers in Florida.

13.    Despite Florida's explicit sales tax exemption for Baby and Toddler Products, Defendant BURLINGTON STORES continues to overcharge Florida consumers, collecting a 7% surcharge purported to be Florida sales tax applicable to purchases of Baby and Toddler Products. As a result, Defendant BURLINGTON STORES has overcharged Plaintiff and members of the Class by levying and collecting payment on these exempt products under guise of collecting a lawfully charged sales tax. Printing on the customer's receipt a line item titled "**Sales Tax 7.000%,**" adding a corresponding amount to the subtotal and collecting such amount is a deceptive and misleading practice leading customers to believe that a sales tax was owed on Baby and Toddler Products which were exempt from such taxes.

6

14.     On various dates during the class period, Plaintiff made a purchase at a BURLINGTON STORES store and was subjected to the deceptive practices of defendant BURLINGTON STORES. The following are details of such an instance affecting Plaintiff: Plaintiff purchased, at the BURLINGTON STORES retail store, located at 10790 Biscayne Blvd Miami Shores, Miami FL, on February 28, 2026, an article of baby/toddler clothing, specifically a pink BISCOTTI COLLEZIONI baby or toddler jumper set dress, from defendant BURLINGTON STORES for the aggregate price of $21.39. The printed receipt for the transaction contains the following itemizations: clothing item description ($19.99); Quantity (1) "Subtotal" ($19.99); **"Tax" ($1.45)** (emphasis added); Total ($21.39).

15.     The transaction described above demonstrates that defendant BURLINGTON STORES misrepresented a 7% surcharge, presenting it as Florida sales tax, and defendant BURLINGTON STORES collected payment from Plaintiff, who relied on the misrepresentations of defendant BURLINGTON STORES to Plaintiff's own pecuniary harm.

16.     Notably, at the time of Plaintiff's purchase Florida's Baby and Toddler product tax exemption had been in effect for **nearly 3 years**.

## II.   FLORIDA ENACTED THE BABY AND TODDLER PRODUCT SALES TAX EXEMPTION TO BENEFIT FAMILIES AND BABIES AND TODDLERS

### A.   Baby and Toddler Products Have Been Exempt from Florida Sales Tax since July 1, 2022

17.     In 2022, the Florida State Legislature (the "Legislature") implemented a sales and use tax exemption for diapers and baby and toddler clothing, apparel, and shoes. Subsequently, the Florida State legislature in conjunction with Florida Governor Ron DeSantis extended the exemption permanently and expanded the tax exemption to include a broader range of Baby and Toddler Products including: baby and toddler clothing, apparel, and shoes, baby cribs, baby playpens, baby play yards, baby exercisers, baby jumpers, bouncer seats, baby swings, baby monitors, baby safety gates, baby strollers, baby wipes, bicycle child carrier seats and trailers designed for carrying young children, breast pumps, bottle sterilizers, baby bottles and nipples, pacifiers, and teething rings, changing tables and changing pads, child safety cabinet locks and latches and electrical socket covers, and children's diapers.

18.     The initial exemption was in effect from July 1, 2022 through June 30, 2023,[2] and by enacting House Bill 7063 during the 2023 Florida Legislative Session

---

[2] See infra, ¶22.

the Baby and Toddler Product tax exemption was made permanent, effective as of July 1, 2023.[3]

### B. The Legislative Intent Was to Create an Estimated Annual Savings of $2.7 Billion to Benefit Babies and Toddlers

19.     The enactment of House Bill 7063 during the 2023-24 Florida Legislative Session represented a significant paradigm shift in the state's approach to consumer tax relief, moving from a reliance on temporary, episodic "tax holidays" to a permanent structural adjustment of the sales and use tax code.

20.     The stated purpose of Florida's expanded Baby and Toddler Product tax exemption (part of a larger tax relief plan) was "aimed at providing families with **$2.7 billion in tax relief**" estimated in just the 2023-2024 fiscal year alone.[4]

21.     Senate Democratic Leader Lauren Book stated that the 2022 exemption (subsequently extended to become permanent) was "[a] true difference-maker for families with young kids across our state" and that "this tax relief [would] go a long way to help those who need it most."[5]

---

[3] See id., at ¶23.

[4] *Certain baby items getting permanent sales tax exemption in Florida*, Fox 13 Tampa Bay (June 30, 2023), https://www.fox13news.com/news/certain-baby-items-getting-permanent-sales-tax-exemption-in-florida (last accessed Feb. 23, 2026) (emphasis added).

[5] https://www.wfla.com/news/florida/diapers-other-baby-and-toddler-products-permanently-tax-free-under-new-florida-law/ (last accessed Feb. 22, 2026).

22.     Florida Governor Ron Desantis stated that he will "continue to push smart fiscal policy that will allow Florida families to keep more of their hard-earned money in their pockets. Stronger families make a stronger Florida."[6]

**C.     The Florida Department of Revenue Provided Public Legal Notice to Defendant BURLINGTON STORES that Baby and Toddler Products were Categorically Exempt from Florida Sales Tax**

23.     Florida provided defendant BURLINGTON STORES with notice of the sales tax exemption by publication entitled *Sales Tax Exemption Period on Children's Diapers and Baby and Toddler Clothing, Apparel, and Shoes July 1, 2022*, published by the Florida Department of Revenue as Tax Information Publication ("TIP") No. 22A01-06, issued May 6, 2022, of the sales tax exemption on Baby and Toddler Products.[7] Indeed, the Florida Department of Revenue maintained a public website landing page devoted exclusively to providing information on the Baby and Toddler Products sales tax exemptions.[8]

24.     On June 9, 2023, Florida, again, provided defendant BURLINGTON STORES with notice of the sales tax exemption by the publication of Florida De-

---

[6] https://www.flgov.com/eog/news/press/2023/governor-ron-desantis-highlights-largest-tax-relief-plan-floridas-history (last accessed Feb. 22, 2026).

[7] See *Sales Tax Exemption Period on Children's Diapers and Baby and Toddler Clothing, Apparel, and Shoes July 1, 2022 through June 30, 2023*, Florida Dep't of Revenue Tax Information Publication (TIP) No. 22A01-06 (issued May 6, 2022).

[8] See Florida Department of Revenue website landing page, at https://florida-revenue.com/DiapersandClothing/Pages/default.aspx (last accessed March 2, 2026).

partment of Revenue TIP No. 23A01-09, entitled *Sales and Use Tax Exemption for Baby and Toddler Products Effective July 1, 2023*.[9]

### III. THE RETAIL STORES OWNED AND OPERATED BY DEFENDANT BURLINGTON STORES SELL TAX-EXEMPT BABY AND TODDLER PRODUCTS TO CONSUMERS

25. Defendant BURLINGTON STORES, at all times relevant times, sold a variety of Baby and Toddler Products including, but not limited to, baby and toddler clothing, apparel, and shoes.

26. These products are Baby and Toddler Products subject to sales and use tax exemption as explicitly stated in the language of the statute. *See* FLA. STAT. § 212.08(7)(qqq), *et seq.*

### IV. THE RETAIL STORES OWNED AND OPERATED BY DEFENDANT BURLINGTON STORES UNLAWFULLY CHARGE AND COLLECT A PURPORTED SALES ON EXEMPTED BABY AND TODDLER PRODUCTS

27. Notwithstanding the explicit and categorical tax exemption for Baby and Toddler Products, the Florida retail stores of defendant BURLINGTON STORES market, distribute, and sell Baby and Toddler Products in Florida, and routinely and systematically charge and collect sales and use tax on Baby and Toddler Products from Florida purchasers.

---

[9] See *Sales and Use Tax Exemption for Baby and Toddler Products Effective July 1, 2023,* Florida Dep't of Revenue TIP No. 23A01-09 (issued June 9, 2023).

28. Indeed, defendant BURLINGTON STORES routinely engaged in practices that violate the Florida legislature's tax exemption in opposition to the Florida State Government's stated public policy goal of assisting families.

29. Specifically, and as more specifically described in Paragraph 14 above, defendant BURLINGTON STORES overcharged Plaintiff sales tax when Plaintiff purchased toddler clothing from a BURLINGTON STORES retail store on or around February 12, 2026.

30. Plaintiff has receipts generated and provided by a store owned by defendant BURLINGTON STORES upon the purchase of articles of clothing covered by the Baby and Toddler Product tax exemption. The receipts indicate a charge identified as a sales tax that was charged and collected from Plaintiff for the product, despite the product explicitly being exempted from sales tax.

31. Upon information and belief, defendant BURLINGTON STORES maintains and operates a point-of-sale system that calculates charges to be paid in sales transactions, including sales and use taxes for products, including for tax exempt Baby and Toddler Products, as reflected in Plaintiff's receipt.

32. Upon information and belief, defendant BURLINGTON STORES uses a point-of-sale or other sales system through which the employees and agents of defendant BURLINGTON STORES process retail sales at their Florida stores. The point-of-sale system is configured by agents and employees of defendant BUR-

LINGTON STORES to automatically calculate and apply sales and use tax for products, including tax exempt Baby and Toddler Products, as reflected in Plaintiff's receipt. The failure by defendant BURLINGTON STORES to properly configure the point-of-sale system to make calculations consistent with applicable sales tax laws.

33. Upon information and belief, the point-of-sale system miscalculations created a systematic overcharge on purchased Baby and Toddler Products at its stores in Florida.

## V. DEFENDANT BURLINGTON STORES ROUTINELY AND SYSTEMATICALLY OVERCHARGES FOR BABY AND TODDLER PRODUCTS UNDER THE PRETENSE OF LAWFUL SALES TAX

### A. Consumers Reasonably Rely on Businesses to Calculate Proper Sales Tax

34. Sales tax is traditionally collected from the purchaser by the business at the point of sale in the form of an additional charge added to the purchase price. Sales tax is collected in this manner because lawmakers wanted to minimize the burden of tax compliance on the individual taxpayers, who cannot be reasonably expected to learn the applicable taxes for every item they purchase.

35. Under Florida law, for each purchase, the sales tax is required to be itemized separately on the sales receipt, notifying consumers of the tax they paid than the price of the product itself.

**B.      Defendant BURLINGTON STORES Portrayed the Charge as a Legally Mandated Tax**

36.      Defendant BURLINGTON STORES misrepresented the nature of the charge by presenting it as a legally mandated tax. Plaintiff and members of the Class relied on the representations by defendant BURLINGTON STORES of the amount owed, causing them to pay amounts that were not lawfully owed.

37.      Defendant BURLINGTON STORES failed to provide Florida consumers any notice or indication that the payment of sales and use tax was not required for Baby and Toddler Products.

38.      Consumers have no obligation to learn the tax code prior to engaging in retail transactions. In fact, sales tax is collected at the time of purchase by the retailer on behalf of the consumer in order to ensure the correct amount of tax is collected. Florida has established a statutory and regulatory scheme that relies on businesses properly collecting sales tax on behalf of the State of Florida. *See* Fla. Stat. Ann. § 212.01 *et seq*. The Florida tax code establishes a legal duty on vendors, such as defendant BURLINGTON STORES, to collect the sales tax on each transaction correctly. Consumers, such as Plaintiff, must reasonably rely on retailers, such as defendant BURLINGTON STORES, to properly collect the sales tax on their behalf and consistent with applicable tax laws.

14

### C.    Consumers Could Not Reasonably Avoid the Improper Charges

39.    The improper collection of sales and use tax on Baby and Toddler Products sold at the Florida retail stores of defendant BURLINGTON STORES was not reasonably avoidable by Florida consumers. No notice of the amount charged for sales and use tax collection is provided by defendant BURLINGTON STORES until a consumer completes the checkout process and receives a receipt. Moreover, even if, arguendo, defendant BURLINGTON STORES provided some notice to consumers, such notice would be insufficient and would require consumers to know the tax code in order to be able to verify whether such notice was an accurate presentment of the tax law.

## VI.    DEFENDANT BURLINGTON STORES BREACHED THE TERMS OF THEIR SALES AGREEMENTS WITH CONSUMERS

### A.    Retail Transactions Establish an Implied-In-Fact Contract

40.    Under Florida law, the performance of the parties in a retail transaction establishes an implied-in-fact contract. Mutual assent is established when the retailer provides the product at a specified price, and the consumer pays the demanded price for the product.

41.    This implied-in-fact contract is memorialized in the sales receipt. In this case, the receipt shows Plaintiff and members of the Class agreed to pay the retail price of the product in addition to any *required* taxes, as calculated by defendant BURLINGTON STORES.

**B.**     **The Charges Exceed the Terms of the Implied-In-Fact Contract**

42.     The implied-in-fact contract entered into during each retail transaction requires consumers to pay their *legally mandated* tax burden, as identified by the retailer.

43.     The amount of tax that may be charged for each transaction is set by the tax code, and the agreement does not authorize the retailer to impose an additional tax burden above what is established as required under the tax code.

44.     Upon information and belief, defendant BURLINGTON STORES decided to ignore both the tax code and the implied-in-fact contract and impose an additional and unlawful tax on Baby and Toddler Products.

45.     The additional and unlawful charge constitutes a breach of the implied-in-fact contract. Plaintiff and members of the Class agreed to pay required taxes, and were therefore harmed by paying more for a product than they agreed to.

**C.**     **Defendant BURLINGTON STORES Unjustly Overcharged Florida Consumers Purchasing Baby and Toddler Products**

46.     Defendant BURLINGTON STORES unfairly, unjustly, and deceptively overcharged Florida consumers sales tax on tax exempt Baby and Toddler Products. This routine practice directly violates Florida law.

47.     Indeed, the routine practice of overcharging Florida consumers undermines the spirit of the retail sales agreement, denying consumers the benefit of

16

their bargained for price by inflating the associated tax burden beyond the legal requirement.

## VII. CUSTOMERS OVERCHARGED BY DEFENDANT BURLINGTON STORES HAVE NOT BEEN REIMBURSED FOR OVERPAYMENT

### A. No Refund has Been Paid by Defendant BURLINGTON STORES, Nor Has Defendant BURLINGTON STORES Offered a Refund

48. Despite knowing that they have unlawfully collected monies from consumers and despite their ability to easily return the impermissibly collected funds, defendant BURLINGTON STORES failed to return the sales tax overcharge to their customers. Moreover, any refund provided must be accompanied by payment for applicable interest thereon.

49. Defendant BURLINGTON STORES thus enriched itself at the expense of Plaintiff and Class Members, forcing them to bring the present action.

### B. Defendant BURLINGTON STORES Has the Ability to Provide Refunds

50. Defendant BURLINGTON STORES has the ability to refund Plaintiff and members of the Class the impermissibly collected sales tax.

51. Upon information and belief, each transaction is recorded by the point-of-sale systems of defendant BURLINGTON STORES, including details such as the amount of tax collected, and sufficient contact and payment information to effectuate such refunds.

52. Moreover, for any charge transacted by credit card, the reimbursement would cost relatively little to provide.

## CLASS ACTION ALLEGATIONS

53. Plaintiff brings this action individually and on behalf of the following Class pursuant to Rule 23 of the Federal Rules of Civil Procedure:

> **All persons who were charged sales tax on any tax-exempt Baby and Toddler Product at a BURLINGTON STORES store in Florida during the period from July 1, 2023 to the present.**

54. Plaintiff reserves the right to re-define the Class definition prior to class certification and after having the opportunity to conduct discovery.

55. Excluded from the Class are: (1) any Judge or Magistrate presiding over this action, any members of their immediate families, and any of their staff; (2) any subsidiaries, affiliates, parents, successors, predecessors, of defendant BURLINGTON STORES, including any entities in which the a controlling interest is owned, and any current or former employees, officers, and directors of defendant BURLINGTON STORES from July 1, 2023 to present; and (3) Plaintiff's counsel and counsel for defendant BURLINGTON STORES.

56. Numerosity (Rule 23(a)(1)): The exact number of members of the Class is unknown and currently unavailable to Plaintiff, but joinder of individual members herein is impractical. The Class is likely comprised of tens of thousands

18

of consumers. The precise number of Class members, and their addresses, is unknown to Plaintiff at this time, but can be ascertained from the records of defendant BURLINGTON STORES. The members of the Class may be notified of the pendency of this action by mail or email, internet postings and/or publications, and supplemented (if deemed necessary or appropriate by the Court) by published notice.

57.   Predominant Common Questions (Rule 23(a)(2)): The Class's claims present common questions of law and fact, and those questions predominate over any questions that may affect individual Class members. The common and legal questions include, without limitation:

a.   Whether defendant BURLINGTON STORES charged and collected sales and use tax on Baby and Toddler Products sold since July 1, 2023;

b.   Whether defendant BURLINGTON STORES knew or should have known that the Baby and Toddler Products they sold since July 1, 2023 should not have been subject to tax pursuant Fla. Stat. § 212.08(7), et seq.;

c.   Whether defendant BURLINGTON STORES took steps to prevent the charging and collection of sales and use tax on tax exempt Baby and Toddler products purchased in Florida;

d.  Whether defendant BURLINGTON STORES wrongfully represented and continues to represent that sales and use tax are owed on their Baby and Toddler Products purchased by Florida consumers;

e.  Whether the representations of defendant BURLINGTON STORES are false, deceptive, and misleading;

f.  Whether defendant BURLINGTON STORES possessed knowledge that those representations were likely to deceive a reasonable consumer;

g.  Whether defendant BURLINGTON STORES possessed knowledge that those representations were false, unfair, deceptive, or misleading;

h.  Whether defendant BURLINGTON STORES continued to disseminate those false, unfair, misleading, and deceptive representations;

i.  Whether defendant BURLINGTON STORES made the representations with the intention that Plaintiff rely on them;

j.  Whether defendant BURLINGTON STORES violated the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, et seq as alleged herein;

k.  Whether defendant BURLINGTON STORES was unjustly enriched;

l.  Whether defendant BURLINGTON STORES entered into an implied contract with Plaintiff during the sale of the Baby and Toddler Products;

20

m.   Whether the charge of sales tax not owed under Fla. Stat. § 212.08(7), et seq. violated the implied contract defendant BURLINGTON STORES entered into with Plaintiff for the sale and purchase of the Baby and Toddler Products;

n.   Whether the charge of sales tax not owed under Fla. Stat. § 212.08(7), et seq. and/or failure to disclose the charge constitutes an unconscionable provision of the implied contract defendant BURLINGTON STORES entered into with Plaintiff during the sale of the Baby and Toddler Products;

o.   Whether defendant BURLINGTON STORES converted Plaintiff property through the charge and collection of sales tax not owed under Fla. Stat. § 212.08(7), et seq.; and

p.   The nature of relief, including damages and equitable relief, to which Plaintiff and members of the Class are entitled.

58.   Typicality of Claims (Rule 23(a)(3)): Plaintiff's claims are typical of the claims of the Class because Plaintiff, like all other Class members, purchased Baby and Toddler Products at the Florida retail stores of defendant BURLINGTON STORES, suffered the same harm caused the unlawful charge, suffered the same proportion of damages as a result of that purchase, and seeks the same relief as the proposed Class members.

59.   Adequacy of Representation (Rule 23(a)(4)): Plaintiff adequately represents the Class because Plaintiff's interests do not conflict with the interests of

21

the members of the Class, and Plaintiff has retained counsel competent and experienced in complex class action and consumer litigation.

60. Plaintiff and Plaintiff's counsel will fairly and adequately protect the interests of the members of the Class.

61. <u>Superiority (Rule 23(b)(3))</u>: A class action is superior to other available means of adjudication for this controversy. It would be impracticable for members of the Class to individually litigate their own claims against defendant BURLINGTON STORES because the damages suffered by Plaintiff and the members of the Class are relatively small compared to the cost of individually litigating their claims. Individual litigation would create the potential for inconsistent judgments and delay and expenses to the court system. A class action provides an efficient means for adjudication with fewer management difficulties and comprehensive supervision by a single court.

### Declaratory Relief
### (Fed. R. Civ. P. 23(b)(1) and (2))

62. In the alternative, this action may properly be maintained as a class action because:

    a.    the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members, which would establish incom-

patible standards of conduct for defendant BURLINGTON STORES; or

b.      the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of other members of the Class not parties to the adjudications, or substantially impair or impede their ability to protect their interests; or

c.      Defendant BURLINGTON STORES acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class as a whole.

### Issue Certification (FED. R. CIV. P. 23(c)(4))

63.     In the alternative, the common questions of fact and law, set forth above, are appropriate for issue certification on behalf of the proposed Class.

### CAUSES OF ACTION

64.     Set forth below in nine Counts are the following causes of action: (i) Count I – Fraudulent Misrepresentation; (ii) Count II – Unjust Enrichment; (iii) Count III – Breach of Contract; (iv) Count IV – Unconscionability; (v) Count V – Conversion; (vi) Count VI – Violation of the Florida Deceptive and Unfair Trade

Practices Act; (vii) Count VII – Negligent Misrepresentation; (viii) Count VIII – Negligence; and (ix) Count IX –Injunctive Relief

## COUNT I

### FRAUDULENT MISREPRESENTATION

*(On behalf of Plaintiff and the Class against Defendant)*

65.     Plaintiff incorporates by reference paragraphs 1-63 of this Complaint and restates them as if fully set forth herein.

66.     Plaintiff brings this claim on behalf of herself and the Class.

67.     Directly, or through their agents and employees, defendant BUR-LINGTON STORES falsely represented, concealed, and failed to disclose to Plaintiff and members of the Class material facts about the sales tax presented and charged on Baby and Toddler Products purchased in Florida.

68.     Defendant BURLINGTON STORES intentionally, knowingly, and/or recklessly made these misrepresentations inducing Plaintiff and members of the Class to pay more when purchasing Baby and Toddler Products at the retail stores of defendant BURLINGTON STORES.

69.     In making these false, misleading, and deceptive representations and omissions, defendant BURLINGTON STORES knew that consumers would pay more when purchasing its products. Defendant BURLINGTON STORES intended for these statements to induce consumers to purchase its Baby and Toddler Prod-

24

ucts for a higher price. Consumers who purchased Baby and Toddler Products from defendant BURLINGTON STORES paid a premium for these products over what consumers would have paid but for the deceptive acts of defendant BURLINGTON STORES in failing to disclose that no sales tax was owed under FLA. STAT. § 212.08(7), *et seq*.

70.     Defendant BURLINGTON STORES owed a duty of care to Plaintiff and members of the Class in providing accurate information, as evidenced by the pecuniary interest of defendant BURLINGTON STORES in the transactions. Defendant BURLINGTON STORES created a special relationship with Plaintiff and members of the Class through representations regarding the tax burden associated with its products.

71.     As an immediate, direct, and proximate result of the false, misleading, and deceptive statements, representations, and omissions, of defendant BURLINGTON STORES, Plaintiff and members of the Class were injured in that they purchased and paid a premium price for the Baby and Toddler Products.

72.     In making misrepresentations of fact and omissions to Plaintiff and members of the Class, defendant BURLINGTON STORES failed to fulfill the legal duty to disclose material facts about the price charged for Baby and Toddler Products sold at defendant BURLINGTON STORES.

25

73.     The failure to disclose the true nature of the additional charge was caused by the deliberate and willful misconduct of defendant BURLINGTON STORES.

74.     Upon information and belief, in making these misrepresentations and omissions, and in doing the acts alleged above, defendant BURLINGTON STORES knew that the misrepresentations were not true.

75.     Defendant BURLINGTON STORES made deceptive representations and intended such misrepresentations to induce the reliance of Plaintiff and Class members.

76.     By and through the point-of-sale system maintained and used by defendant BURLINGTON STORES, systematically and intentionally presented unlawful charges as legally required sales tax to consumers, including Plaintiff and members of the Class, at all retail stores in Florida.

77.     Plaintiff and members of the Class did in fact rely on these misrepresentations and purchased Baby and Toddler Products from defendant BURLINGTON STORES to their detriment. Given the deceptive representations of defendant BURLINGTON STORES regarding the additional charge for the Baby and Toddler Products, Plaintiff's and members of the Class's reliance on such misrepresentations were justifiable.

78. As a direct and proximate result of the conduct of defendant BUR-LINGTON STORES, Plaintiff and members of the Class have suffered actual damages. Plaintiff and members of the Class purchased products that are worth less than the price they paid, and they would have paid less for the Baby and Toddler Products had they known the additional charge was not legally mandated sales tax. Plaintiff and the Class have also been deprived of the time value of money owed as a refund.

79. Plaintiff and members of the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available.

**COUNT II**
**UNJUST ENRICHMENT**
*(On behalf of the Plaintiff and the Class against Defendant)*

80. Plaintiff incorporates by reference paragraphs 1-63 of this Complaint and restates them as if fully set forth herein.

81. Plaintiff brings this claim on behalf of herself and the Class.

82. Plaintiff and the other members of the Class conferred a benefit on defendant BURLINGTON STORES by purchasing Baby and Toddler Products and paying what they believed to be sales tax on such products.

83. Defendant BURLINGTON STORES received a benefit in the form of additional revenue from Plaintiff's and Class Members' purchases. Plaintiff and

Class Members suffered a detriment in the additional, unlawful funds they paid for Baby and Toddler Products.

84.     On information and belief, by collecting improper sales tax on the purchases of Baby and Toddler Products by Plaintiff and the other members of the Class, defendant BURLINGTON STORES was unjustly enriched by the amounts of such sales tax revenue plus interest thereon. Moreover, at the expense of Plaintiff and the other members of the Class, defendant BURLINGTON STORES acted for its own pecuniary interests in avoiding the expenses of modifying its point-of-sale systems and databases and training its employees to correct its sales tax assessment and collection practices.

85.     Retention of those monies under these circumstances is unjust, inequitable, and injurious to Plaintiff because the charging of the sales tax by defendant BURLINGTON STORES was *pro tanto* misleading and financially harmful to Plaintiff and the other members of the Class.

86.     Plaintiff and members of the Class would have paid less money for the Baby and Toddler Products had they known that no sales tax was owed on their purchases.

87.     It would be inequitable for defendant BURLINGTON STORES to retain the benefit of their practice of unlawfully charging sales taxes at the expense of Plaintiff and the other Class members.

88.     Because of retention by defendant BURLINGTON STORES of the non-gratuitous benefits conferred by Plaintiff and the other members of the Class is unjust and inequitable, defendant BURLINGTON STORES must pay restitution to Plaintiff and all members of the putative class for unjust enrichment, as ordered by the Court.

<u>**COUNT III**</u>
**BREACH OF CONTRACT**
*(On Behalf of Plaintiff and the Class against Defendant)*

89.     Plaintiff incorporates by reference paragraphs 1-63 of this Complaint and restates them as if fully set forth herein.

90.     Plaintiff brings this claim on behalf of herself and the Class.

91.     Under Florida law, the covenant of good faith and fair dealing applies to every contract. Good faith and fair dealing means preserving the spirit—not merely the letter—of the bargain.

92.     The parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitutes examples of bad faith in the performance of contracts.

93.     Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his or her conduct to be justified. A lack of good faith may be overt or may consist of inaction, and fair dealing may require

29

more than honesty. Examples of violations of good faith and fair dealing are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

94. Defendant BURLINGTON STORES breached the covenant of good faith and fair dealing through its policy to charge sales tax on Baby and Toddler Products despite no such tax being owed under FLA. STAT. § 212.08(7), *et seq*. The imposition of a tax specifically exempted under Florida law constitutes an evasion of the spirit of the bargain and abuse of the power to specify terms.

95. The Uniform Commercial Code § 2-301 states "[t]he obligation of the seller is to transfer and deliver and that of the buyer is to accept and pay in accordance with the contract."

96. Under Florida law, each sale of goods and products establishes an implied-in-fact contract in which the buyer agrees to pay the requisite price, in addition to associated taxes required by law, and the seller agrees to provide the agreed upon product in exchange for payment.

97. Defendant BURLINGTON STORES breached the terms of the implied contract by charging sales tax on their Baby and Toddler Products despite no such tax being owed under FLA. STAT. § 212.08(7), *et seq*.

98.     Plaintiff and members of the Class have sustained damages as a result of the breach of the implied sales contract by defendant BURLINGTON STORES.

99.     Plaintiff seeks relief including actual damages and any other relief the Court deems necessary and proper.

## COUNT IV
## UNCONSCIONABILITY
### *(On Behalf of Plaintiff and the Class against Defendant)*

100.    Plaintiff incorporates by reference paragraphs 1-63 of this Complaint and restates them as if fully set forth herein.

101.    Plaintiff brings this claim on behalf of herself and the Class.

102.    The policy of defendant BURLINGTON STORES to charge what it represents is a sales tax on their Baby and Toddler Products when, in fact, no such tax is owed under FLA. STAT. § 212.08(7), *et seq.* is substantively and procedurally unconscionable. No attempts were made by defendant BURLINGTON STORES to notify customers that the Baby and Toddler Products are exempt from Florida state sales tax pursuant to FLA. STAT § 212.08(7), *et seq.* before charging sales tax on the Baby and Toddler Product.

103.     Defendant BURLINGTON STORES used its undue discretionary power to determine and impose additional charges it represents are required, applicable taxes even at a time when Florida state law specifically exempts Baby and Toddler Products from sales tax.

31

104. The implied-in-fact contract established during the retail transaction governs the transactions at issue. The agreement establishes that Plaintiff will pay the price of the product and any associated taxes or fees charged by the merchant in exchange for the product. Large retail stores such as defendant BURLINGTON STORES are parties of vastly superior bargaining strength; they establish the price of the product, which of the taxes required by law will be passed on to the consumer, and what additional fees will be charged.

105. In choosing to list and charge the additional amount paid by Plaintiff as a "tax" and not as a fee or an increase in the price of the product, defendant BURLINGTON STORES misrepresented the nature of the charge and denied Plaintiff the opportunity to fairly assess the price of the product.

106. Considering the great business acumen and experience of defendant BURLINGTON STORES in relation to Plaintiff and the members of the Class, the great disparity in the parties' relative bargaining power, the complexity of the tax code at issue, the commercial unreasonableness of the contract terms, the purpose and effect of the terms, and similar public policy concerns, this provision is unconscionable and, therefore, unenforceable as a matter of law.

107. Plaintiff and members of the Class have sustained damages as a result of the unconscionable policies and practices of defendant BURLINGTON STORES.

108. Plaintiff seeks relief including actual damages and any other relief the Court deems necessary and proper.

## COUNT V
## CONVERSION
### *(On Behalf of Plaintiff and the Class against Defendant)*

109. Plaintiff incorporates by reference paragraphs 1-63 of this Complaint and restates them as if fully set forth herein.

110. Plaintiff brings this claim on behalf of herself and the Class.

111. Defendant BURLINGTON STORES possessed a legal duty to charge Plaintiff the agreed upon price of the product along with the applicable taxes and to prevent overcharges on any purchases.

112. Defendant BURLINGTON STORES wrongfully collected payment from Plaintiff under the auspices of collecting required sales and use tax on purchases of Baby and Toddler Products, despite such products being exempted from such tax pursuant to FLA. STAT. § 212.08(7), *et seq.*

113. Defendant, without proper authorization, assumed and exercised, and continues to assume and exercise, the right of ownership over these funds, in hostility to the rights of Plaintiff and the members of the Class, without legal justification.

114.    Upon information and belief, defendant BURLINGTON STORES intended to permanently deprive Plaintiff and the members of Class of these funds and continue to deprive Plaintiff and the Class of these funds.

115.    These funds are properly owned by Plaintiff and the members of the Class, and nevertheless, defendant BURLINGTON STORES took control of their payments without legal basis.

116.    Plaintiff and the members of the Class are entitled to the immediate possession of these funds.

117.    Defendant BURLINGTON STORES wrongfully converted these specific and readily identifiable funds.

118.    The wrongful conduct of defendant BURLINGTON STORES described herein is continuing.

119.    As a direct and proximate result of this wrongful conversion, Plaintiff and the members of the Class have suffered, and continue to suffer, damages.

120.    By reason of the foregoing, Plaintiff and the members of the Class are entitled to recover all damages and costs permitted by law, including all amounts wrongfully converted by defendant BURLINGTON STORES.

## COUNT VI
## VIOLATION OF THE FLORIDA DECEPTIVE AND
## UNFAIR TRADE PRACTICES ACT
### FLA. STAT. §§ 501.201, *et seq.*
### *(On Behalf of Plaintiff and the Proposed Class)*

121. Plaintiff incorporates by reference paragraphs 1-63 of this Complaint and restates them as if fully set forth herein.

122. FDUTPA states "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

123. By marketing, making available for sale, selling, and distributing Baby and Toddler Products, defendant BURLINGTON STORES engaged in "trade or commerce" as defined by the FDUTPA. See FLA. STAT. § 501.203(8).

124. Defendant BURLINGTON STORES violated and will continue to violate this statute, and committed and continues to commit, unfair or deceptive acts or practices in the conduct of trade or commerce, as alleged herein, including, by routinely charging and collecting from consumers Florida sales and use tax on tax exempt Baby and Toddler Products while omitting material information concerning the products' tax-exempt status under FLA. STAT § 212.08(7), *et seq.*

125. Defendant BURLINGTON STORES knowingly or recklessly misrepresented the taxable nature of the tax-exempt Baby and Toddler Products when it charged for and collected sales and use tax at the time of purchase, by making false

35

and misleading representations about the sold Baby and Toddler Products, including by itemizing a sales and use tax line item on the receipt at the time of purchase.

126.    Plaintiff and Class Members relied on the material misrepresentations and omissions of defendant BURLINGTON STORES concerning the taxable status of Baby and Toddler Products which were otherwise deemed tax exempt by Florida Law.

127.    As a result, Plaintiff and Class Members paid excess and unlawful taxes on Baby and Toddler Products. Defendant BURLINGTON STORES overcharged consumers for their Baby and Toddler product purchases. By paying these additional and unlawful taxes, Plaintiff and Class Members were harmed.

128.    Defendant BURLINGTON STORES will continue to cause harm through these material misrepresentations and omissions without legal action.

129.    Plaintiff seeks relief under the statute including actual damages, injunctive relief, costs and attorneys' fees, and any other relief the Court deems necessary and proper.

## COUNT VII
## NEGLIGENT MISREPRESENTATION
### *(On behalf of Plaintiff and the Class against Defendant)*

130.    Plaintiff incorporates by reference paragraphs 1-63 of this Complaint and restates them as if fully set forth herein.

131.    Plaintiff brings this claim on behalf of herself and the Class.

36

132.    Defendant BURLINGTON STORES directly, or through its agents and employees, falsely represented, concealed, and failed to disclose to Plaintiff and members of the Class regarding the sales tax charged on its Baby and Toddler Products purchased in Florida. Defendant BURLINGTON STORES represented that Plaintiff and Class Members owed sales tax on Baby and Toddler Products, which they did not. Defendant BURLINGTON STORES thus made false representations to Plaintiff and Class Members.

133.    Defendant BURLINGTON STORES failed to exercise reasonable care when making such representations. Defendant BURLINGTON STORES knew or should have known that such representations made regarding sales tax on Baby and Toddler Products were false.

134.    Defendant BURLINGTON STORES directly, or through its agents and employees, falsely represented, concealed and failed to disclose to Plaintiff and members of the Class regarding what it charged on their Baby and Toddler Products purchased in Florida. Defendant BURLINGTON STORES represented that Plaintiff and Class Members owed sales tax on Baby and Toddler Products, which they did not. Defendant BURLINGTON STORES thus made false representations to Plaintiff and Class Members.

135.    Defendant BURLINGTON STORES owed a duty of care to Plaintiff and members of the Class in providing accurate information, as evidenced by the

pecuniary interest of defendant BURLINGTON STORES in the transactions. Indeed, defendant BURLINGTON STORES formed a special legal relationship with Plaintiff and members of the Class through representations regarding the tax burden associated with its products.

136.    The Florida tax code imposes a duty upon defendant BURLINGTON STORES to correctly calculate and collect sales taxes on products they sell.

137.    Defendant BURLINGTON STORES intended to induce Plaintiff and Class Members to rely on the misrepresentations of defendant BURLINGTON STORES regarding the sales tax owed on Baby and Toddler Products.

138.    Plaintiff and Class Members justifiably relied on the misrepresentations of defendant BURLINGTON STORES regarding sales tax.

139.    As an immediate, direct, and proximate result of the false, misleading, and deceptive statements, representations, and omissions, made by defendant BURLINGTON STORES, Plaintiff paid additional and unlawful charges for the Baby and Toddler Products.

140.    Plaintiff suffered pecuniary injury in paying for a charge that defendant BURLINGTON STORES represented to be a sales tax on Baby and Toddler Products that was not required to be paid.

141.     Plaintiff and members of the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available.

## COUNT VIII
### NEGLIGENCE
*(On behalf of Plaintiff and the Class against Defendant)*

142.     Plaintiff incorporates by reference paragraphs 1-63 of this Complaint and restates them as if fully set forth herein.

143.     Defendant BURLINGTON STORES owed a legal duty under common law to Plaintiff and members of the Class to exercise reasonable care in abiding by Florida law exempting Baby and Toddler Product purchases from sales tax. This includes a duty of care by to ensure its sales associates exercise reasonable care in abiding by Florida law exempting Baby and Toddler Product purchases from sales tax.

144.     Defendant BURLINGTON STORES owed a duty of care to Plaintiff and the proposed Class members to ensure that reasonable computer and sales systems consistent with Florida law and industry standards are maintained to exempt, collect, or remit the proper amount of sales tax at the time of Baby and Toddler Product purchases.

145.     The duty of care owed by defendant BURLINGTON STORES arose from each of the following instances described herein: (i) soliciting Plaintiff and

39

proposed Class members' business; (ii) accepting Plaintiff and proposed Class members' business and purchases; and/or (iii) collecting Plaintiff and proposed Class members' payment for purchases. The foregoing is part of the regular practices of defendant BURLINGTON STORES while engaging in the ordinary course of business.

146.    Defendant BURLINGTON STORES exercised control over its registers and point-of-sales systems. Defendant BURLINGTON STORES was the party that trained, or failed to train, employees in using such point-of-sale systems correct and report improper sales tax charges. Defendant BURLINGTON STORES was the party with greatest ability to prevent the foreseeable harm of great magnitude that is caused by a systematic overcharge of sales tax on Baby and Toddler Products.

147.    Plaintiff and members of the Class were neither in a position to nor expected to know the tax code at the time of every purchase of tax-exempt Baby and Toddler Products.

148.    Plaintiff and members of the Class trusted and expected defendant BURLINGTON STORES to calculate and charge the appropriate amount of sales tax and exempt from tax any tax-exempt Baby and Toddler Products.

149.    Defendant BURLINGTON STORES knew or should have known that the routine and systematic practice of charging Plaintiff and members of the Class

sales tax on tax exempt Baby and Toddler Products would cause harm. Specifically, defendant BURLINGTON STORES knew or should have known that the practice would cause the type of harm the Florida legislature intended to prevent.

150.  As a direct and proximate result of the negligence of defendant BURLINGTON STORES, Plaintiff and members of the Class have suffered and will continue to suffer injury or harm, including their overpayment of sales tax on tax exempt Baby and Toddler Products.

151.  Further, as a direct and proximate result of the negligence of defendant BURLINGTON STORES, Plaintiff and members of the Class are entitled to recover actual, consequential, and nominal damages.

## COUNT IX
## INJUNCTIVE RELIEF
### *(On behalf of Plaintiff and the Class against Defendant)*

152.  Plaintiff incorporates by reference paragraphs 1-63 of this Complaint and restates them as if fully set forth herein.

153.  This claim for equitable relief is brought on Plaintiff's behalf and on behalf of the Class.

154.  As set forth in greater detail above, the point-of-sale system maintained and operated by defendant BURLINGTON STORES systematically and improperly calculates, assesses, and collects sales tax on Baby and Toddler Products that are explicitly exempt from Florida sales tax under FLA. STAT. § 212.08(7)(qqq),

*et seq.* The point-of-sale system, and the algorithm it uses to identify and assess sales tax liability, fails to recognize or apply the statutory tax exemption for Baby and Toddler Products, resulting in the routine, systematic and ongoing overcharge of sales tax by defendant BURLINGTON STORES.

155. Furthermore, defendant BURLINGTON STORES failed to provide adequate training to employees and agents regarding the proper application of Florida's Baby and Toddler Products sales tax exemption. Employees operating the point-of-sale systems lack the knowledge, training, and resources necessary to identify when sales tax has been improperly charged on exempt Baby and Toddler Products, or to correct such errors before collecting payment from consumers.

156. In the absence of permanent equitable injunctive relief, defendant BURLINGTON STORES will continue to improperly charge and collect sales tax on tax-exempt items, as they have so continued in since June 2023 when the tax exemptions were first enacted.

157. The damage to the public trust and confidence in engaging in retail commerce in Florida is an irreparable injury to Plaintiff, members of the Class, and all Florida consumers. This harm to Plaintiff and members of the Class is not speculative or hypothetical, but ongoing and imminent. Defendant BURLINGTON STORES continues to operate its point-of-sale systems in the same manner that resulted in the unlawful overcharges to Plaintiff and members of the Class. Upon

information and belief, defendant BURLINGTON STORES has not corrected its point-of-sale systems to properly exempt Baby and Toddler Products from Florida sales tax and has not implemented adequate employee training programs to identify and correct such errors.

158. Further, this irreparable harm is not merely a pecuniary loss which can be wholly addressed by money damages alone; money damages are inadequate to redress high likelihood of future harm. While damages may compensate Plaintiff and members of the Class for past overcharges, they do not address the repeated failures of defendant BURLINGTON STORES to implement technological and human-resource safeguards to protect consumers from the known risk of systematic errors due to improper programming or algorithmic errors.

159. Even assuming, arguendo, that consumers would somehow be able to catch red-handed, again, defendant BURLINGTON STORES in instances of future overcharges or misconduct arising from programming or algorithmic errors in the proprietary systems used by defendant BURLINGTON STORES, it is impracticable and burdensome for Plaintiff and members of the Class to, through repeated litigation, seek damages and a systematic fix at each instance of future overcharges.

160. Each improper tax charge undermines consumer confidence in Florida's retail shopping ecosystem, deprives Florida families of the significant and

bipartisan financial relief that the legislature and the executive unambiguously provided, and perpetuates a systematic violation of the public trust that Florida retailers will accurately calculate and collect only those taxes lawfully owed. This is an ever-present danger for point-of-sales computer systems, which use proprietary and undisclosed algorithms in making categorial determinations of the applicability of tax laws to a given transaction.

161.   This action is likely to succeed on the merits of its underlying claims, including but not limited to those claims set forth in Count I through Count VIII of this Complaint. Florida law unambiguously exempts Baby and Toddler Products from sales and use tax pursuant to FLA. STAT. § 212.08(7)(qqq), et seq. The Florida Department of Revenue has issued public guidance confirming the scope and applicability of this exemption. Defendant BURLINGTON STORES was on notice of the exemption and nevertheless charged and collected sales tax on exempt Baby and Toddler Products from Plaintiff and members of the Class.

162.   Plaintiff possesses documentary evidence in the form of receipts demonstrating that defendant BURLINGTON STORES charged and collected sales tax on Baby and Toddler Products that were exempt under Florida law. Defendant BURLINGTON STORES has no legal justification for charging and collecting sales tax on products the Florida Legislature has expressly exempted from such tax.

163.   The balance of hardships weighs decidedly in favor of Plaintiff and members of the Class. The threatened injury to Plaintiff and members of the Class including, among other things, the continued threat of unlawful extraction of money under the guise of legally mandated sales tax, substantially outweighs any burden imposed on defendant BURLINGTON STORES to prevent systemic or algorithmic overcharges, and to train employees to fix incorrect tax charges before presenting the charges to the customer.

164.   Defendant BURLINGTON STORES, as a sophisticated national retailer operating over 1,100 stores nationwide, possesses the resources and technical capability to update its point-of-sale systems to properly exempt Baby and Toddler Products from Florida sales tax. Defendant BURLINGTON STORES also possesses the resources to develop and implement employee training programs regarding Florida's tax exemption laws. Defendant BURLINGTON STORES indubitably demonstrated that, in the absence of supervision by a court or other third-party, it is unwilling or unable to fulfill its existing legal duties and obligations.

165.   The requested injunctive relief serves the public interest. The Baby and Toddler Products sales tax exemption as part of a significant bi-partisan broader tax relief plan "aimed at providing families with $2.7 billion in tax relief" (estimated for tax year 2024-25 alone) to assist Florida families with the costs of raising young children. The stated purpose of the Legislature and the Governor

was to benefit Florida families and provide meaningful financial relief for essential products for children.

166.   Furthermore, the public has a strong interest in ensuring that retailers comply with Florida's tax laws and that consumers can trust that the sales tax charges presented by retailers are accurate and lawful. Injunctive relief in this case will deter defendant BURLINGTON STORES and other retailers from similar misconduct and will promote public confidence in the integrity of retail transactions in Florida.

### *Narrowly Tailored Injunctive Relief*

167.   Plaintiff and members of the Class are entitled to injunctive relief in the form of an order directing defendant BURLINGTON STORES to enact, implement, and maintain policies and procedures to ensure point-of-sale system accuracy and compliance with Florida's Baby and Toddler Products sales tax exemption. Such policies and procedures shall include, but not be limited to:

a.   Configuring and updating point-of-sale systems to accurately identify Baby and Toddler Products as defined under Fla. Stat. § 212.08(7)(qqq), *et seq.*, and to automatically exempt such products from Florida sales and use tax;

46

b.  Implementing regular audits and quality assurance checks to ensure the point-of-sale system accurately applies all applicable sales tax exemptions, including the Baby and Toddler Products exemption;

c.  Establishing procedures for the prompt identification and correction of any sales tax miscalculations discovered prior to or after a transaction is completed; and

d.  Maintaining documentation demonstrating ongoing compliance with Florida's sales tax exemption laws.

168.  Plaintiff and members of the Class are further entitled to injunctive relief in the form of an order directing defendant BURLINGTON STORES to develop, implement, and maintain comprehensive training programs for all employees and agents who operate or have access to point-of-sale systems at defendant BURLINGTON STORES's Florida retail locations. Such training programs shall include, but not be limited to:

a.  Education regarding Florida's Baby and Toddler Products sales tax exemption under FLA. STAT. § 212.08(7)(qqq), *et seq.*, including the categories of products covered by the exemption;

b.  Instruction on the proper use and operation of point-of-sale systems, including how to identify when sales tax has been improperly calculated or applied;

47

c.  Training on procedures for correcting sales tax errors before completing a transaction and collecting payment from the consumer;

d.  Instruction on procedures for issuing refunds or corrections to consumers who have been improperly charged sales tax on exempt products; and

e.  Ongoing refresher training and updates as necessary to ensure continued compliance with applicable Florida sales tax laws.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and the proposed Class, prays for an Order granting relief and judgment against defendant BURLINGTON STORES as follows:

a.  declaring this action to be a proper class action, appointing Plaintiff and Plaintiff's counsel to represent the Class, and requiring defendant BURLINGTON STORES to bear the costs of class notice;

b.  enjoining defendant BURLINGTON STORES from charging any surcharge purporting to be Florida state sales and use tax on the Baby and Toddler Products sold in Florida;

c.  directing defendant BURLINGTON STORES to adopt and implement policies, procedures and safeguards sufficient to prevent future mis-

conduct to audit and correct miscalculations of sales tax made by the point-of-sale system;

d.    directing defendant BURLINGTON STORES to adopt and implement policies, procedures and safeguards sufficient to prevent future misconduct ensuring that all employees authorized to use the point-of-sale systems in Florida have training to identify and to remove miscalculated sales tax charges;

e.    awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining defendant BURLINGTON STORES from continuing the unlawful practices alleged herein, and injunctive relief to remedy the past conduct of defendant BURLINGTON STORES;

f.    requiring defendant BURLINGTON STORES to pay restitution, including interest on amounts paid, to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice or a violation of law, plus pre- and post-judgment interest thereon;

g.    requiring defendant BURLINGTON STORES to disgorge or return, including interest thereon, all monies, revenues, and profits obtained by

49

means of any wrongful or unlawful act or practice, including disgorgement of applicable interest on the monies returned;

h. awarding Plaintiff and the Class appropriate relief, including applicable statutory damages and penalties, and actual and punitive damages;

i. awarding Plaintiff and the Class the costs of prosecuting this action, including expert witness fees;

j. awarding Plaintiff and the Class attorneys' fees and costs as allowable by law;

k. awarding pre-judgment and post-judgment interest; and

l. granting any other relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED: March 4, 2026                    Respectfully submitted,


/s/ Jonathan B. Cohen
Jonathan B. Cohen (FL Bar No. 27620)
**BRYSON HARRIS SUCIU &
DEMAY PLLC**
3833 Central Avenue
St. Petersburg, FL 33713
Tel: (813) 786-8622
jcohen@brysonpllc.com

David J. Tayar°*
**TAYAR SHUMAN &
ASSOCIATES LLP**
3324 Parsons Blvd., Ste. 3F
Flushing, NY 11354
Tel: (917) 750-7740
dtayar@tayarshuman.com

Will Shuman°*
**TAYAR SHUMAN &
ASSOCIATES LLP**
3605 Tuckerman Lane
Rockville, MD 20852
Tel: (202) 415-8207
wshuman@tayarshuman.com

Jason P. Sultzer°*
**SULTZER & LIPARI PLLC**
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12061
Tel: (845) 483-7100
sultzerj@thesultzerlawgroup.com

51

James R. DeMay°*
**BRYSON HARRIS SUCIU &
DEMAY PLLC**
900 West Morgan Street
Raleigh, NC 27603
Tel: (704) 941-4648
jdemay@brysonpllc.com

Charles Schimmel, Esq.*
**SULTZER & LIPARI PLLC**
1800 Gaylord
Denver, CO 80206
Tel: (913) 634-6762
schimmelc@thesultzerlawgroup.com

Scott E. Silberfein*
**SULTZER & LIPARI PLLC**
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12601
Tel: (914) 356-0061
silberfeins@thesultzerlawgroup.com

*Attorneys for Plaintiff*

° *Lead Attorney for Plaintiff*

* *Pro hac vice forthcoming*

52

**DEMAND FOR PRESERVATION**

PLEASE TAKE NOTICE that BURLINGTON STORES INC., d/b/a BURLINGTON and BURLINGTON COAT FACTORY shall not destroy, conceal or alter in any manner whatsoever any or all evidence, including but not limited to: records, documents, physical or electronic data, and other tangible items pertaining to or relevant to property discoverable in the referenced matter, and must make all efforts to preserve such material.

This notice applies to any on- and off-site computer systems and removable electronic media, plus all computer systems, services, and devices (including all remote access and wireless devices) used for your overall operation. This includes, but is not limited to, e-mail and other electronic communications; electronically stored documents, records, images, graphics, recordings, spreadsheets, databases; calendars, system usage logs, contact manager information, telephone logs, internet usage files, deleted files, cache files, user information, and other data. Further, this notice applies to archives, backup and disaster recovery tapes, discs, drives, cartridges, voicemail and other data. All operating systems, software, applications, hardware, operating manuals, codes keys and other support information needed to fully search, use, and access the electronically stored information.

Electronically stored information (hereinafter "ESI") should be afforded the broadest possible definition and includes (by way of example and not as an exclusive list) potentially relevant information electronically, magnetically or optically stored as:

- Digital communications (e.g., e-mail, voice mail, instant messaging);
- Word processed documents (e.g., Word or WordPerfect documents and drafts);
- Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets);
- Accounting Application Data (e.g., QuickBooks, Money, Peachtree data files);
- Image and Facsimile Files (e.g., .PDF, .TIFF, .JPG, .GIF images);
- Sound Recordings (e.g., .WAV and .MP3 files);
- Video and Animation (e.g., .AVI and .MOV files);
- Databases (e.g., Access, Oracle, SQL Server data, SAP);
- Contact and Relationship Management Data (e.g., Outlook, ACT!);
- Calendar and Diary Application Data (e.g., Outlook PST, Yahoo, blog tools);
- Online Access Data (e.g., Temporary Internet Files, History, Cookies);
- Presentations (e.g., PowerPoint, Corel Presentations)
- Network Access and Server Activity Logs;
- Project Management Application Data;
- Computer Aided Design/Drawing Files; and,
- Back Up and Archival Files (e.g., Zip, .GHO)

You are directed to immediately initiate a litigation hold for potentially relevant ESI, documents and tangible things, and to act diligently and in good faith to secure and audit compliance with such litigation hold. You are further directed to immediately identify and modify

or suspend features of your information systems and devices that, in routine operation, operate to cause the loss of potentially relevant ESI. Examples of such features and operations include:

- ·  Purging the contents of e-mail repositories by age, capacity or other criteria;
- ·  Using data or media wiping, disposal, erasure or encryption utilities or devices;
- ·  Overwriting, erasing, destroying or discarding back up media;
- ·  Re-assigning, re-imaging or disposing of systems, servers, devices or media;
- ·  Running antivirus or other programs effecting wholesale metadata alteration;
- ·  Releasing or purging online storage repositories;
- ·  Using metadata stripper utilities;
- ·  Disabling server or IM logging; and,
- ·  Executing drive or file defragmentation or compression programs.

In order to assure that your obligation to preserve documents and things will be met, please forward a copy of this letter to any and all persons and entities with custodial responsibilities for the items referred to herein. Notify all individuals and affiliated organizations of the need and duty to take the necessary affirmatives steps to comply with the duty to preserve evidence.